## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **TAVERN DOWNING, SR.,** *et al.,* | |
| *Plaintiffs,* | |
| | **CIVIL ACTION NO.** |
| **v.** | **5:25-cv-00277-TES** |
| **ANITA HOWARD,** *et al.,* | |
| *Defendants.* | |

## ORDER DENYING PLAINTIFF'S MOTION TO AMEND

Pro se Plaintiff Tavern Downing, Sr., has filed a Motion to Amend [Doc. 20] the operative pleading in this case, which, if granted, would be his fourth attempt to get his cast of defendants and his claims against those defendants where he wants them. *See, e.g.,* [Doc. 1]; [Doc. 9]; [Doc. 15]. To be frank, Plaintiff has not withheld the slightest effort to avoid making this case a complete mess with his trial-and-error pleading practices to figure out how he needs to assert his claims. For the reasons discussed below, however, namely the futility of Plaintiff's Proposed Second Amended Complaint [Doc. 20-1], the Court **DENIES** his Motion to Amend.

### A.    Procedural History

When Plaintiff first initiated this lawsuit, he sued the Bibb County District Attorney, Anita Howard; Tony May; Paige Miller; Vanessa Flournoy; Robert Collins, III; Deborah Stratham; and John Doe. [Doc. 1, p. 2]. Although each of these individuals are

in some way, shape, or form local government employees, Plaintiff wasn't at all clear in what capacity (official, individual, or both) he wanted to sue them. [*Id.* at pp. 1–2]. By and large, Plaintiff's two-page Complaint [Doc. 1] was far from a model of clarity, but Howard, May, and Flournoy (hereinafter "Movant Defendants") nevertheless quickly sought dismissal of Plaintiff's claims against them following service. *See* [Doc. 4], *in connection with* [Doc. 10]; [Doc. 10-1]; [Doc. 10-2].

Right now, the underlying facts aren't all that relevant as they'll be discussed in some detail below, but as a quick refresher, Plaintiff filed this lawsuit to recover 600 bitcoins—about $57,000,000 in today's market—allegedly "taken without his consent." [Doc. 1, p. 1]. After a superior court judge dismissed a criminal case being prosecuted against Plaintiff by the Bibb County District Attorney, the digital wallet[1] related to the bitcoins was allegedly missing from Plaintiff's seized computer when authorities returned it to him. [*Id.*]. Plaintiff sued under 42 U.S.C. § 1983 alleging violations of his Fifth, Eighth, and Fourteenth Amendment rights secured by the United States Constitution as well as state-law tort claims for theft by conversion under O.C.G.A. §§

---

[1] The Court is by no means a cryptocurrency expert. In fact, it knows very little about it. To start, bitcoins aren't physical coins, they're digital currency that utilize blockchain technology. What's the blockchain? That is a decentralized, distributed ledger that records transactions over a peer-to-peer network in a secure and transparent way. *See Kleiman v. Wright*, No. 18-CV-80176-BLOOM/Reinhart, 2018 WL 6812914, at *1 (S.D. Fla. Dec. 27, 2028). The blockchain bundles several verified transactions into blocks and connects them to earlier blocks through cryptography. *See id.* That way, everyone sees every transaction related to the blockchain. *See id.* ("Bitcoin is a decentralized digital currency that uses a ledger to track the ownership and transfer of every bitcoin in existence"). The digital wallet is a separate physical device (think flash drive or something similar) that holds a user's password keys to the blockchain offline so that the keys are protected from malware or unauthorized access. *See id.* So, it appears that Plaintiff is alleging someone took his digital wallet holding his keys to the blockchain and access to his supposed $57,000,000.

16-8-4(a) and 51-10-1. [*Id.* at pp. 1–2].

With the "course of proceedings"—that is, the apparent nature of Plaintiff's claims and the substance of the arguments exchanged between Plaintiff and the Movant Defendants regarding their Motion to Dismiss [Doc. 4]—taking an official-capacity track, the Court considered Plaintiff's federal claims against the Movant Defendants through an official-capacity lens. *See Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) ("When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed."); *see also Hafer v. Melo*, 502 U.S. 21, 24 n.* (1991) (reiterating the "obvious[] prefer[ence] for [a] plaintiff to be specific in the first instance to avoid any ambiguity" in pleadings); *see also* [Doc. 13, pp. 10–11]. That analysis led to without-prejudice dismissals of the federal claims as well as the claims for theft by conversion Plaintiff asserted against the Movant Defendants. *See* [Doc. 13, pp. 8–15]. As of that ruling, the Movant Defendants were no longer parties in this case, and when it came to Miller, Collins, Stratham, and Doe (hereinafter "Unserved Defendants"), the Court made sure to note that there was nothing on the record indicating they had been properly served. *See* [*id.* at p. 15]; *see* [Doc. 11, p. 1 (noting Proof of Service returned "unexecuted" for Miller)].

Mindful of his 90-day service deadline proscribed by Federal Rule of Civil Procedure 4(m), Plaintiff filed a Motion for Extension of Time [Doc. 14] seeking to push

the deadline by which he must serve the Unserved Defendants. The Court granted Plaintiff's requested 60-day extension, but since his First Amended Complaint [Doc. 15] made no mention of or any allegations against Collins, the Court dropped him as a party to this case pursuant to Federal Rule of Civil Procedure 21. [Doc. 17, p. 1 n.1]; *see generally* [Doc. 15]. With Plaintiff filing his Complaint on June 30, 2025, the 60-day extension of time brings his service deadline to December 1, 2025. [Doc. 17, p. 2]; *see Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1304 (11th Cir. 2021).

Now, in Plaintiff's latest effort to amend the operative pleading, not only does he—for the first time—attempt to add Bibb County as a defendant, but he's reasserting "adjusted" claims against the previously dismissed Movant Defendants and essentially recasting his allegations against the Unserved Defendants, except for Collins. Like before, there's no mention of Collins in Plaintiff's latest effort to amend. *See generally* [Doc. 15]; [Doc. 20-1]. Put simply, in his Proposed Second Amended Complaint, Plaintiff names Bibb County, Howard, May, Flournoy, Miller, Stratham, and Doe as defendants. Let's take each of these in stride, starting first with the Federal Rule of Civil Procedure that governs amendments to a pleading before trial.

### B.    <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 15(a)(1), a plaintiff may amend his complaint once as a matter of course within 21 days after serving it, or within 21 days after service of a motion under Federal Rule of Civil Procedure 12(b). Since neither of

those doors are available for Plaintiff right now, he must—as he has done—seek leave of court to amend. Fed. R. Civ. P. 15(a)(2). Prompted by the very text of Rule 15(a)(2), the Court recognizes that this leave should be freely given but only—"when justice so requires." *Id.*

That said, district courts may deny a motion to amend for numerous reasons, including "undue delay, bad faith[,] or dilatory motive on the part of the movant[;] repeated failure to cure deficiencies by amendments previously allowed[;] [and] undue prejudice to the opposing party by virtue of allowance of the amendment[.]" *Foman v. Davis*, 317 U.S. 178, 182 (1962). While undue delay, bad faith, or dilatory motive and Plaintiff's failure to have his pleading deficiencies already cured are arguably front and center in this case, a district court is also not required to allow an amendment when the amendment is futile. *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). An amendment is considered futile if the complaint, as amended, "would still be properly dismissed." *Silberman v. Mia. Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019) (citing *Cockrell*, 510 F.3d at 1310). Put differently, where a proposed claim would not withstand a motion to dismiss, that claim is futile. *Downing v. Thompson*, No. 5:23-cv-00501-TES, 2024 WL 3700199, at *3 (M.D. Ga. Aug. 7, 2024) ("*Downing I*") (citing *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996)); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) (explaining that futility is another way of saying "inadequacy

5

as a matter of law"). Taking it all together, "justice," under Rule 15(a)(2), doesn't "require" leave to amend if a proposed claim cannot withstand a motion to dismiss. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008); Fed. R. Civ. P. 15(a)(2).

### C.    Discussion

####    1.    Bibb County

When it comes to Plaintiff's effort to amend and add the county as a party, that effort is futile. Here's why. In Count III of his Proposed Second Amended Complaint, Plaintiff wants to raise a claim against Bibb County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). [Doc. 20-1, ¶¶ 35–37]. To support his *Monell* claim, Plaintiff makes three "allegations"—three statements he thinks constitute the necessary factual allegations required to properly state a plausible claim. *See* Fed. R. Civ. P. 8(a), *infra*.

First, Plaintiff alleges that "Bibb County failed to implement or enforce adequate policies to ensure proper evidence retention, accountability, or supervision, resulting in a violation of Plaintiff's constitutional and human rights." [Doc. 20-1, ¶ 28 (emphasis removed)]. Second, Plaintiff claims that "Bibb County maintained and tolerated customs, policies, and practices that failed to ensure proper documentation, tracking, and safeguarding of seized property, resulting in constitutional violations." [*Id.* at ¶ 36 (emphasis removed)]. "These policies, or lack thereof," according to Plaintiff's third allegation, "were the moving force behind the unlawful search, seizure, and ultimate theft of [his] property." [*Id.* at ¶ 37 (emphasis removed)]. These allegations are nothing

more than legal conclusions; thus, Plaintiff's *Monell* claim against Bibb County, as pled, would not withstand a motion to dismiss. *Fla. Power & Light Co.*, 85 F.3d at 1520.

Whether a complaint states a plausible claim is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citation omitted) (alterations adopted). In other words, Rule 8 requires more than what Plaintiff has put forth in his Proposed Second Amended Complaint. Rule 8's sole purpose is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief." *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 555–56 (2007). Aside from his oversimplification of generic evidence-retention activities, Plaintiff makes absolutely no effort to describe the alleged "customs, policies, [or] practices" he believes caused the alleged constitutional violations he complains of. [Doc. 20-1, ¶¶ 36, 43]. Without the slightest descriptive effort regarding what Plaintiff thinks the county's policies and practices are, there's no "fair notice" to Bibb County when it comes to its ability to mount a defense. *See Twombly*, 550 U.S. at 555; *Bailey v. Reliance Tr. Co.*, No. 1:04-CV-0340-JOF, 2002 WL 8154440, at *3 (N.D. Ga. Mar. 8, 2005) ("[T]he

purpose of a pleading is to give the adverse party a fair notice of the claim, so that the adverse party can prepare an answer and an adequate defense.").

So, in the instance of deciding whether Plaintiff's *Monell* claim is futile, the Court must employ the two-step-framework guidance from the Eleventh Circuit. *McCullough*, 907 F.3d at 1333 (citation omitted); *Fla. Power & Light Co.*, 85 F.3d at 1520; *Silberman*, 927 F.3d at 1133. The first step is to identify the allegations that are "no more than conclusions." *McCullough*, 907 F.3d at 1333 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* "A court decides whether [Rule 8's pleading standard] is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow [it] to reasonably infer that [a] plaintiff [may be] entitled to the legal remedy sought." *Barreth*, 2020 WL 4370137, at *2 (citation omitted).

"To prove a *Monell* claim, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [county] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Andre v. Clayton Cnty., Ga.*, 148 F.4th 1282, 1300 (11th Cir. 2025). Sure, Plaintiff easily alleges a violation of his own constitutional rights, but that's the extent of

it. *See id.* (citing *Hoefling v. City of Mia.*, 811 F.3d 1271, 1280–81 (11th Cir. 2016)). Glaringly absent from Plaintiff's allegations underlying his *Monell* claim, though, is any assertion "that others ha[ve] suffered the same or similar constitutional violation." *Id.* As they are currently pled, Plaintiff's allegations only provide the elements of a *Monell* claim. He needed to do more.

Plaintiff's allegations represent a classic "formulaic recitation of the elements of a cause of action," and that "will not do." *Twombly*, 550 U.S. at 555. In other words, Plaintiff's allegations are nothing more than legal conclusions, and courts are not bound to accept legal conclusions as facts. *Iqbal*, 556 U.S. at 678. When a party merely offers legal conclusions—like Plaintiff has done here as a possible consequence of a Google search for "how to" state a *Monell* claim—courts must "identify [those] conclusory allegations and then discard them . . . because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681). When the Court disregards Plaintiff's conclusory allegations, as the Eleventh Circuit instructs in *McCullough*, there is nothing left for it to determine whether he states a plausible *Monell* claim against Bibb County. In drafting his factual allegations for his *Monell* claim, Plaintiff needed to "plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). Plaintiff's "unadorned, the-defendant-unlawfully-harmed-me accusations" simply aren't enough. *Id.* (citation omitted).

Rest assured, the Court is cognizant of its obligation to give lenience to Plaintiff's pleadings because he is pro se. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). This leniency, though, does not give the Court license to serve as de facto counsel for Plaintiff or to rewrite his deficient allegations for him so that he can sustain a *Monell* claim against Bibb County.[2] *See GJR Investments, Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998); *Lemons v. Lewis*, 969 F. Supp. 657, 659 (D. Kan. 1997) (pro se status does not absolve litigant of duty to comply with fundamental procedural rules; nor is it a court's "function to become an advocate for the pro se litigant"). All in all, Plaintiff's three "allegations" putting forth nothing more than the elements of a *Monell* claim are insufficient. *See, e.g.*, [Doc. 20-1, ¶¶ 35–37]. If the Court were to permit Plaintiff's effort to hold Bibb County liable under *Monell* with the allegations as they are pled, the county would swiftly win a motion to dismiss. Thus, Plaintiff's effort to amend his First Amended Complaint to add Bibb County as a defendant under *Monell* is futile, and the Court **DENIES** his Motion to Amend as to this claim **without**

---

[2] In any event, neither the Bibb County District Attorney, O.C.G.A. § 15-18-6, nor the Bibb County Sheriff, O.C.G.A. § 15-16-10, are under the control of Bibb County. *See* Ga. Const. Art. 9, § 2, ¶ I. They are independent constitutional officers of the State of Georgia. *See, e.g., Owens v. Fulton Cnty.*, 877 F.2d 947, 951 (11th Cir. 1989). A district attorney's relationship to "the county" involves merely budgetary and administrative matters. *Id.* at 952. An alleged violation of an individual's constitutional rights, however, "arises out of the district attorney's exercise of discretion in the prosecution of state offenses, a state-created power." *Id.* As for a sheriff, "Georgia's Constitution . . . makes the sheriff's office a constitutional office independent from the county entity itself, precludes all county control, and grants only the State control over sheriffs . . . ." *Manders v. Lee*, 338 F.3d 1304, 1312 (11th Cir. 2003) (en banc). In other words, a county sheriff is independent of and not answerable to the governing authorities of the respective geographical county that sheriff serves. *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1336 (11th Cir. 2003); *Pellitteri v. Prine*, 776 F.3d 777, 780 (11th Cir. 2015). As such, Bibb County doesn't make the policies, "or lack thereof," for either the Bibb County District Attorney or the Bibb County Sheriff. [Doc. 20-1, ¶ 37].

**prejudice**. [Doc. 20-1, ¶¶ 28, 36–37].

>    2.    **Howard, May, Flourney, Miller, Stratham, and Doe**

Assessing the futility of Plaintiff's effort to add a *Monell* claim against Bibb County was the easy part. Now comes the real procedural mess caused not only by the fact that just three out of seven of the defendants named in this case have been properly served but by the numerous complaints littered onto this record due to Plaintiff's attempts to correctly plead his claims. Before delving into what is sure to be a lengthy discussion to unwind and explain the problems caused by this case's procedural history, the Court pauses to mention two things.

First, as should be clear by now, Plaintiff is pro se, and that gets him a fair dose of leniency in the Eleventh Circuit. *Hughes*, 350 F.3d at 1160. Second, dismissals without prejudice exist for several reasons. Most pertinent here is that a litigant belaboring under a without-prejudice dismissal can take the opportunity to more carefully draft a new pleading to try and "fix"—for lack of a better word—what was wrong with the first. "The primary meaning of 'dismissal without prejudice' . . . is dismissal without barring [a] plaintiff from returning later, to the same court, with the same underlying claim." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001). Notwithstanding a court's ability—and in some instances, its obligation—to dismiss without prejudice, it is borderline abusive on the judicial process and to the federal courts of the United States when pro se plaintiffs initiate lawsuits without having first

taken the smallest effort to research how to best state their claims. *See Procup v. Strickland*, 792 F.2d 1069, 1073–74 (11th Cir. 1986) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."). Federal-court litigation should not be viewed as a guessing game where pro se litigants are free to plead and replead their causes in an experimental fashion seeing what, if anything, sticks. Prior to filing a complaint, a litigant, if he's going to represent himself, should be expected to research the legal issues and nuances for his claims to the best of his ability. When a pro se litigant fails to take reasonably meaningful time to assess how to properly bring his claims and files a complaint based on (at a minimum) what some web-based search engine likely told him, he greatly "encroach[es] on the judicial machinery needed by others." *Id.* at 1074.

Here, it's pretty apparent that Plaintiff filed his Complaint in this case unarmed with any real knowledge on how to sue or in which legal capacity he should sue local government employees for the relief he seeks. *See, e.g.*, [Doc. 4-1, p. 5 (citing ante litem notice requirements pursuant to O.C.G.A. § 50-21-26); p. 6 (discussing service requirements under the Georgia Tort Claims Act, O.C.G.A. § 50-21-35)]; [Doc. 13, p. 11 (citing [Doc. 4-1, p. 11 (the Movant Defendants' note that "Plaintiff does not specify the relief he seeks")])]. To be fair, sometimes licensed attorneys miss the mark when it comes to squaring immunity-based defenses with lawsuits involving defendants sued

in their official and individual capacities. Nevertheless, Plaintiff chose to act as his own attorney, and in doing so, he filed an ill-conceived Complaint with the apparent hope that he could fix it piece by piece or amendment by amendment after his adversaries or, better still, the Court told him what was wrong with it. Having said all of this, let's unpack this case's tangled procedural history and how that history affects Plaintiff's claims. Some of this procedural-history account will be a tad repetitive from the Court's discussion at the outset of this Order, but in order to streamline everything, those repetitive bits bear repeating.

Plaintiff filed his Complaint on June 30, 2025. [Doc. 1, p. 1 (CM/ECF filing notation of "Filed 06/30/25")]; *see also Joye v. Sec. Dep't of Navy*, 736 F. App'x 861, 864 (11th Cir. 2018) ("[A] lawsuit is considered filed on the date the [C]lerk [of Court] receives the complaint.'") (citing *Robinson v. City of Fairfield*, 750 F.2d 1507, 1509 n.2 (11th Cir. 1985)). The Clerk of Court issued Summonses to each of Plaintiff's named defendants (except for Doe) on July 9, 2025.[3] [Doc. 2 (Stratham)]; [Doc. 2-1 (Miller)]; [Doc. 2-2 (Collins)]; [Doc. 2-3 (May)]; [Doc. 2-4 (Flournoy)]; [Doc. 2-5 (Howard)]. On August 19, 2025, the Movant Defendants filed their Motion to Dismiss. [Doc. 4]. Plaintiff responded on September 8, 2025, and the Movant Defendants "chose to forego filing a reply brief." [Doc. 5]; [Doc. 5-1]; [Doc. 6]; [Doc. 7]; *see also* [Doc. 13, p. 8]. As discussed

---

[3] On September 15, 2025, Plaintiff filed Proofs of Service for Howard, May, and Flourney—who are, of course, the Movant Defendants. [Doc. 10 (Flourney)]; [Doc. 10-1 (May)]; [Doc. 10-2 (Howard)].

above, the Court dismissed Plaintiff's federal claims as well as his claims for theft by conversion against the Movant Defendants without prejudice on September 23, 2025. *See generally* [Doc. 13]. As of the date the Court dismissed the Movant Defendants, "there [was] no indication" that Miller, Collins, Stratham, and Doe—the Unserved Defendants—had been properly served. [*Id.* at p. 15 (citing [Doc. 11, p. 1 (noting Proof of Service returned "unexecuted' for Miller)])].

Five days later, Plaintiff sought the 60-day extension of time to serve the Unserved Defendants, and when granted, that extension brought his service deadline to December 1, 2025. [Doc. 14]; [Doc. 17, p. 2]. Along with seeking the 60-day service extension, it was then Plaintiff filed his First Amended Complaint. [Doc. 15]. In it, Plaintiff adjusted course with respect to the capacity in which he sues Miller and Stratham—this time asserting his claims against them in their individual capacity.[4] [*Id.* at p. 1]. It was also via Plaintiff's First Amended Complaint that he dropped Collins from this lawsuit. *See generally* [Doc. 15], *in connection with* [Doc. 17, p. 1 n.1].

With less than a month before the expiration of the extended service deadline, Plaintiff filed the instant Motion to Amend on November 5, 2025. [Doc. 20-1, pp. 1, 8]. By now, hopefully everything has "clicked" or has come full circle with Plaintiff's

---

[4] As for Doe, Plaintiff continued to sue him in his official capacity in his First Amended Complaint. [Doc. 15, pp. 1–2]; *but see* [Doc. 15, p. 3 ("Plaintiff brings this suit against Defendants in their individual capacities only.") (emphasis removed)].

efforts to sue Howard, May, Flournoy, Miller, Stratham,[5] and Doe in their individual capacities.[6] Not to add one last layer of complication, but Plaintiff's Proposed Second Amended Complaint and his First Amended Complaint assert different claims than what he included in his original Complaint. When he first started this case, Plaintiff sued for alleged violations of his Fifth, Eighth, and Fourteenth Amendment rights pursuant to § 1983 and for theft by conversion under Georgia law. [Doc. 1, p. 1]. Then, in his First Amended Complaint, Plaintiff omitted his state law claim for theft by conversion and opted to only sue for claims under federal law. In addition to claims under the Fourth, Fifth, and Fourteenth Amendments, Plaintiff also asserted a civil conspiracy claim pursuant to § 1983. [Doc. 15, p. 3].

When an amended complaint does not specifically refer to or adopt an earlier pleading, the amended complaint controls. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) (citations omitted); *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006); *Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) (citation omitted). In other words, the Court will not and cannot consider Plaintiff's earlier pleadings. They are "legal nullities" since he makes no specific reference to them in his Proposed Second Amended Complaint. *Hoefling*, 811

---

[5] Due to an updated address for service, the Clerk of Court reissued the Summons for Stratham on November 10, 2025. [Doc. 21, (Stratham)]; *compare* [Doc. 2, p. 1], *with* [Doc. 21, p. 1].

[6] Unlike the Complaint, which didn't mention either capacity at all, or the First Amended Complaint, which sued Doe in his official capacity, Plaintiff states in his Proposed Second Amended Complaint that Doe is sued in his individual capacity. [Doc. 1, pp. 1–2]; [Doc. 15, pp. 1–2], [Doc. 20-1, p. 1].

F.3d at 1277. So, aside from the already-dismissed *Monell* claim against Bibb County, the remainder of Plaintiff's Proposed Second Amended Complaint, as permitted, would be the operative pleading in this case. Just like in his First Amended Complaint, Plaintiff asserts a constitutional deprivation claim under the Fourth, Fifth, and Fourteenth Amendments and a civil conspiracy claim pursuant to § 1983 against Howard, May, Flournoy, Miller, Stratham, and Doe.[7] *Compare* [Doc. 15, p. 3], *with* [Doc. 20-1, ¶¶ 29–34, 38–40]. Here is the Court's summation of the factual background Plaintiff supplies within his Proposed Second Amended Complaint.

Yes, of course, the Court extracted the following factual allegations from Plaintiff's Proposed Second Amended Complaint, but as you'll soon see, the Court has already dealt with this exact same set of facts in another lawsuit. *Downing v. Thompson*, No. 5:24-cv-00277-TES, 2024 WL 4829476, at *1–2 (M.D. Ga. Nov. 18, 2024) ("*Downing II*"). *Downing II*, however, was against different defendants. Not to put too fine a point on it, but this is Plaintiff's *third* iteration of his case filed in this Court. *See Downing I*, 2024 WL 3700199 (dismissed for insufficient service of process); *Downing II*, 2024 WL 4829467 (dismissed on various substantive grounds). Also, as it's required to do, the Court assumed the truth of only the factual allegations pled in Plaintiff's Proposed

---

[7] Plaintiff also asserts a claim for violations of the "Universal Declaration of Human Rights" in Count V of his Proposed Second Amended Complaint. [Doc. 20-1, ¶¶ 41–42]. However, the Court **DENIES** Plaintiff's Motion to Amend regarding this claim **without prejudice** for the reasons discussed in connection with his other claims.

Second Amended Complaint. *Twombly*, 550 U.S. at 555.

      a.    <u>Factual Background</u>

      In executing a search warrant related to a parcel delivered to Plaintiff's home, law enforcement officers from the Bibb County Sheriff's Office arrested him on February 15, 2019. [Doc. 20-1, ¶ 12]; *Downing II*, 2024 WL 4829476, at *1. The terms of the warrant only allowed the officers to enter Plaintiff's home if he triggered a trip wire attached to the parcel. [Doc. 20-1, ¶ 13]; *Downing II*, 2024 WL 4829476, at *1. It never triggered. [Doc. 20-1, ¶ 14]; *Downing II*, 2024 WL 4829476, at *1. Yet, about an hour after the parcel was delivered to Plaintiff's home, the officers entered his home and "conduct[ed] an extensive search." [Doc. 20-1, ¶ 15]; *Downing II*, 2024 WL 4829476, at *1. They seized "a package" (it's unclear whether this "package" is different from the "parcel" delivered to Plaintiff's home) and some of Plaintiff's personal belongings but "found no contraband or illegal substances." [Doc. 20-1, ¶ 16]; *but see* Complaint, *Downing II*, 5:24-cv-00277-TES (M.D. Ga. Aug. 14, 2024), Dkt No. 1, at p. 7 (alleging that "the package contained [one] pound of MDMA"); *see also Downing II*, 2024 WL 4829476, at *1. "Plaintiff was nonetheless arrested." [Doc. 20-1, ¶ 17]; *Downing II*, 2024 WL 4829476, at *2. During the search of Plaintiff's home, one of the personal-property items allegedly seized by the officers was a digital wallet apparently holding the keys to his approximately 600 bitcoins. [Doc. 20-1, ¶ 18]; [Doc. 1, p. 1]; *Downing II*, 2024 WL 4829476, at *1.

Almost five years later, a superior court judge dismissed all criminal charges "on grounds that the arrest and search were unlawful and unconstitutional." [Doc. 20-1, ¶ 19 (emphasis removed)]; *Downing II*, 2024 WL 4829476, at *2 (discussing the dismissal of "all charges because the search of [Plaintiff's] home lacked a valid search warrant or exigent circumstances"). Following this dismissal, Plaintiff sought the return of his seized property. [Doc. 20-1, ¶ 20]; *Downing II*, 2024 WL 4829476, at *2.

Stratham, who according to Plaintiff's Proposed Second Amended Complaint works for the Bibb County Sheriff's Office, told Plaintiff that the sheriff's office no longer had his property and referred him to the district attorney's office. [Doc. 20-1, ¶¶ 10, 21]; *Downing II*, 2024 WL 4829476, at *2. May, who according to Plaintiff's Proposed Second Amended Complaint works for the Bibb County District Attorney, denied possession of the property and directed Plaintiff back to the sheriff's office. [Doc. 20-1, ¶¶ 7, 21]; *Downing II*, 2024 WL 4829476, at *2. Talking with Stratham, again, she told Plaintiff that someone from the district attorney's office, "identified only as John Doe," signed out the property. [Doc. 20-1, ¶ 22]; *Downing II*, 2024 WL 4829476, at *2. Although Plaintiff later discovered that the district attorney's office "quietly returned" his property to the sheriff's office, the digital wallet was missing. [Doc. 20-1, ¶ 24]; *Downing II*, 2024 WL 4829476, at *2.

As of the date Plaintiff requested leave to amend his First Amended Complaint, he claims that no defendant has produced a chain of custody for the allegedly missing

digital wallet, admitted to its possession, or returned it.  [Doc. 20-1, ¶ 25]. Plaintiff

alleges that Doe, as an employee of the district attorney's office, took the digital wallet

containing the bitcoins and that Howard, May, Flournoy, Miller, and Stratham "aided,

abetted, and conspired to conceal [Doe's] theft or acted with deliberate indifference to

it."[8] [*Id.* at ¶¶ 11, 26]. No one else, according to Plaintiff's Proposed Second Amended

Complaint, took the digital wallet except for Doe. [*Id.* at ¶ 26]. Plaintiff alleges that the

loss of the digital wallet represents a theft valued at "hundreds of millions of dollars."

[*Id.* at ¶ 27]. Relying on these factual allegations, Plaintiff asserts the following claims

against Bibb County, Howard, May, Flournoy, Miller, Stratham, and Doe (hereinafter

"Defendants").

> b.    <u>Unlawful Seach and Seizure Under the Fourth Amendment</u>

First, via § 1983, Plaintiff asserts a claim for unlawful search and seizure under

the Fourth Amendment in Count I of his Proposed Second Amended Complaint. [*Id.* at

¶¶ 29–31]. He states that Defendants violated his Fourth Amendment rights to be free

from unreasonable searches and seizures "by entering and searching his home without

legal authority and by seizing his property without probable cause." [*Id.* at ¶ 30]. Not

one of these defendants, though, entered Plaintiff's home according to his own factual

---

[8] This allegation, by the way, as it relates to Howard, May, Flournoy, Miller, and Stratham, is a legal
conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, it's not entitled to any presumption of truth,
and the Court disregards it. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Iqbal*, 556
U.S. at 679).

allegations in his Proposed Second Amended Complaint.[9] [*Id.* at ¶ 29]. The officers who entered Plaintiff's home on February 15, 2019, according to his allegations in *Downing II*, were Jesse Thompson, Marcus Baker, Jarrett Arrington, Reginald Nelson, Paul McDuffie, and Joel Presley.[10] 2024 WL 4829476, at *1 (citing Complaint, *Downing II*, 5:24-cv-00277-TES (M.D. Ga. Aug. 14, 2024), Dkt No. 1, at p. 7). Even if Defendants did enter and search Plaintiff's home on February 15, 2019, he's commenced his Fourth Amendment claim against them far too late. The Court has already explained this to Plaintiff in *Downing II*. 2024 WL 4829476, at *3 (quoting *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008)).

The statute of limitations for claims brought under § 1983 are governed by the statute of limitations for a personal injury action in the state where the cause of action arose, which in this case is Georgia. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). Personal injury actions in Georgia have a two-year statute of limitations. O.C.G.A. § 9-3-33 (". . . actions for injuries to the person shall be brought within two years after the right of action accrues . . . ."); *see also Lovett v. Ray*, 327 F.3d 1181, 1182–83 (11th Cir. 2003). Although the length of the statute of limitations is provided by state law, federal law dictates the date of accrual. *Wallace*, 549 U.S. at 388–89. Federal law provides that a

---

[9] This alone is enough to end his Fourth Amendment claim against these defendants.

[10] *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (holding that courts may take judicial notice of what public records purport to say—such as a pleading filed in another case—because such documents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") (quoting Fed. R. Evid. 201(b)(2)).

claim accrues "when [a] plaintiff has 'a complete and present cause of action.'" *Downing II*, 2024 WL 4829476, at *3 (citing *Reed v. Goertz*, 598 U.S. 230, 235 (2023)). That is generally the date when a plaintiff knew or should have known of his injury. *Id.* (quoting *Glenn v. Schill*, No. 3:22-CV-77 (CDL), 2023 WL 3855590, at *3 (M.D. Ga. June 6, 2023)).

Since Plaintiff "knew or should have known" of the injuries giving rise to his Fourth Amendment claim on February 15, 2019, his effort to assert such a claim against Defendants via his Proposed Second Amended Complaint is untimely, and thus, futile because the claim would not withstand a motion to dismiss. *Id.*; *Fla. Power & Light Co.*, 85 F.3d at 1520; *Silberman*, 927 F.3d at 1133. "Dismissal [for failure to state a claim] 'on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is [time barred].'" *Winston v. Walsh*, No. 5:19-cv-00070-TES, 2019 WL 3068451, at *3 (M.D. Ga. July 12, 2019) (quoting *Bhd. of Locomotive Eng'rs v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008)). "This is because [a] statute of limitations bar is an affirmative defense," and a plaintiff is "not required to negate an affirmative defense in his complaint." *Id.* (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)) (cleaned up).

Here, it is apparent from the face of Plaintiff's Proposed Second Amended Complaint that his Fourth Amendment claim against Defendants is time barred. *See Simpson v. Florida*, 708 F. App'x 635, 636 (11th Cir. 2018) ("A district court may properly

dismiss [claims asserted via] § 1983 . . . without requiring any responsive pleadings, for failure to state a claim if the [claims] would be barred by the state's statute of limitations."). Consequently, Plaintiff's effort to sue Defendants for alleged Fourth Amendment violations are futile, and the Court also **DENIES** his Motion to Amend as to Count I **with prejudice**. [Doc. 20-1, ¶¶ 29–30].

      c.   <u>Due Process Under the Fifth and Fourteenth Amendments</u>

Second, via § 1983, Plaintiff asserts a claim for deprivation of property under the Due Process Clauses of the Fifth and Fourteenth Amendments in Count II of his Proposed Second Amended Complaint. [*Id.* at ¶¶ 32–34]. Plaintiff claims that Defendants "unlawfully deprived [him] of his property without due process of law by failing to return his seized [digital] wallet and concealing its disappearance" in violation of the Fifth and Fourteenth Amendments. [*Id.* at ¶ 33]. Of course, wholly absent from his Proposed Second Amended Complaint is any mention of when this occurred. *See generally* [Doc. 20-1]. Yes, technically, from the Court's above discussion, Plaintiff's Proposed Second Amended Complaint controls, to the extent it's permitted, but it seems illogical—at worst inefficient—for the Court to not refer to the earlier pleading that *does* supply the relative date. *Lowery*, 483 F.3d at 1219; *Dresdner Bank AG*, 463 F.3d at 1215; *Varnes*, 674 F.2d at 1370 n.6; *Hoefling*, 811 F.3d at 1277.

In his Complaint, filed on June 30, 2025, Plaintiff alleges on November 3, 2023 (not long after the superior judge dismissed the criminal charges against Plaintiff), he

"found out" that his 600 bitcoins "were taken without his consent." [Doc. 1, p. 1]; *see also* [Doc. 1, p. 1 (CM/ECF filing notation of "Filed 06/30/25")]; *but compare* [Doc. 1, p. 1 (alleging dismissal of criminal charges on October 10, 2023)], *with* [Doc. 20-1, ¶ 19 (alleging dismissal of criminal charges on October 18, 2023)]. Although Plaintiff's deprivation of property claim is not barred by the applicable statute of limitations, O.C.G.A. § 9-3-33, the factual allegations he included in his Proposed Second Amended Complaint for that claim, when stripped of their legal conclusions, are non-existent. *See, e.g.*, [Doc. 20-1, ¶ 26]; *see Wallace*, 549 U.S. at 388–89; *Reed*, 598 U.S. at 235; *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

Without any real factual allegations, Plaintiff's Proposed Second Amended Complaint, as it relates to his deprivation of property claim under the Due Process Clauses of the Fifth and Fourteenth Amendments, would not withstand a motion to dismiss. *Fla. Power & Light Co.*, 85 F.3d at 1520. Thus, the Court **DENIES without prejudice** Plaintiff's Motion to Amend as Count II as well.

Even if Plaintiff's mince allegations could be seen as sufficient under Rule 8, *Twombly*, *Iqbal*, and *McCullough*, he can't use § 1983 as a remedy to recover his supposed 600 bitcoins. Taking the general premise of Plaintiff's allegations as true and assuming that Doe actually has Plaintiff's 600 bitcoins, there is "no procedural due process violation . . . 'if a meaningful [post-deprivation] remedy is available for the loss.'" *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (quoting *Hudson v. Palmer*, 468 U.S.

571, 533 (1984)). Whether Plaintiff likes it, his remedy to recover his 600 bitcoins lies in the capable hands of the superior court judge in Bibb County. The State of Georgia has a civil cause of action for the wrongful conversion of personal property. *See* O.C.G.A. § 51-10-1 ("The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies."). And yes, Plaintiff initially sought such relief in this Court, but with any dismissal of his federal claims (as the Court ruled with respect to the Movant Defendant's Motion to Dismiss), it lacks subject-matter jurisdiction to hear a state law claim since there is no diversity of citizenship. *See* 28 U.S.C. § 1332; *see also* [Doc. 1, p. 2]; [Doc. 4-1, p. 2]; [Doc. 13, pp. 13–15]. Plaintiff and each of his defendants are from Georgia. [Doc. 20-1, ¶¶ 4, 6–11]. When, like here, "a plaintiff claims that the [S]tate has retained his property without due process of law," the State of Georgia has provided an adequate post-deprivation remedy. *Lindsey*, 936 F.2d at 561 (quoting *Byrd v. Stewart*, 811 F.2d 554, 555 n.1 (11th Cir. 1987)). The existence of § 51-10-1 supplies yet another reason for the Court to **DENY** Plaintiff's Motion to Amend with respect to his claim for deprivation of property under the Due Process Clauses of the Fifth and Fourteenth Amendments.

        d.    <u>Civil Conspiracy</u>

    Third, via § 1983, Plaintiff asserts a civil conspiracy claim in which he, once again, in his quintessential conclusory custom, only puts forth legal conclusions. *See* n.8, *supra*. In Count IV of his Proposed Second Amended Complaint, Plaintiff alleges

"[u]pon information and belief," that Doe "unlawfully took possession of and misappropriated the [digital] wallet" and that Howard, May, Flournoy, Miller, and Stratham "aided, abetted, and conspired to conceal [Doe's] theft or acted with deliberate indifference to it." [Doc. 20-1, ¶ 26]. Plaintiff, however, failed to articulate any factual allegations as to how he believes Doe "took" 600 bitcoins from his digital wallet and how Howard, May, Flournoy, Miller, and Stratham "conspired to conceal" it. [*Id.*].

To succeed on a § 1983 claim, as Plaintiff is aware at this point, he must establish that the offending conduct was committed by a person acting under color of state law and that the conduct deprived him of rights secured by the Constitution or laws of the United States. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Howard is the Bibb County District Attorney, and May, Flournoy, and Miller, according to Plaintiff's Proposed Second Amended Complaint, work for her. [Doc. 20-1, ¶¶ 6–9]. Stratham, as briefly discussed earlier, works for the sheriff's office. [*Id.* at ¶ 10]. So, we definitely have people acting "under the color of state law." *Hale*, 50 F.3d at 1582.

However, a plaintiff claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists. *See Phillips v. Mashburn*, 746 F.2d 782, 784 (11th Cir. 1984). Following *Iqbal*, "complaints in § 1983 cases must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 708

n.2 (11th Cir. 2010). Here, Plaintiff doesn't provide those specifics.

Conspiracies that allegedly interfere with civil rights are covered by 42 U.S.C. § 1985. "The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002). Relevant to Plaintiff's allegations, § 1985 provides a remedy for a conspiracy to interfere with civil rights. *See* 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) resulting in an injury to person or property, or a deprivation of any right or privilege of a citizen of the United States. *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146–47 (11th Cir. 1996). To prove the second element, a plaintiff must show that the deprivation of rights or privileges occurred because of "some racial, or . . . otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Id.* at 1147.

Here, Plaintiff's allegations do not even begin to touch what is required to state a civil conspiracy claim. Again, his "unadorned, the-defendant-unlawfully-harmed-me accusations" simply aren't enough to withstand a motion to dismiss. *McCullough*, 907 F.3d at 1333; *Fla. Power & Light Co.*, 85 F.3d at 1520. Thus, as with Plaintiff's preceding efforts to amend his operative pleading, his effort with respect to his civil conspiracy

claim is also futile. *Silberman*, 927 F.3d at 1133. Accordingly, the Court **DENIES without prejudice** Plaintiff's Motion to Amend as to his civil conspiracy claim as well.

    **D.**    <u>Conclusion</u>

       For the many, many reasons discussed above, the Court **DENIES** Plaintiff's Motion to Amend **AS FUTILE**. Given this ruling, Plaintiff has until December 1, 2025, to serve his First Amended Complaint on those defendants who have yet to be served. [Doc. 17, p. 2]. Should Plaintiff fail to serve these individuals and file the executed Proofs of Service by December 1, 2025, the Court will dismiss his claims against them pursuant to Rule 4(m) for failure to timely serve. No further extension for service will be granted past the Court's current extension to December 1, 2025. [*Id.*].

       **SO ORDERED**, this 20th day of November, 2025.

                         <u>S/ Tilman E. Self, III</u>
                         **TILMAN E. SELF, III**
                         **UNITED STATES DISTRICT JUDGE**